UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| LANCE CARTER,<br><br>    Plaintiff,<br><br>v.<br><br>CANYON FUEL CO., LLC,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS**<br><br><br>Case No. 4:25-cv-00087-AMA-PK<br><br>District Judge Ann Marie McIff Allen<br><br>Magistrate Judge Paul Kohler |

This matter comes before the Court on the Motion to Dismiss Amended Complaint filed by Defendant Canyon Fuel Co., LLC ("Canyon").[1] For the reasons discussed below, the Court grants in part and denies in part Canyon's Motion.

## BACKGROUND[2]

Plaintiff Lance Carter began his employment with Canyon on March 18, 2005, as a miner at its facility in Carbon County, Utah.[3] In 2021, Canyon promoted Mr. Carter to a building maintenance environmental technician, in which role Mr. Carter was responsible for the maintenance of buildings and environmental systems.[4] As part of his employment benefits, Mr.

---

[1] ECF No. 14, filed October 31, 2025. Canyon filed an earlier Motion to Dismiss, ECF No. 10, after which Mr. Carter filed an Amended Complaint. ECF No. 11. As the Court will discuss, the earlier Motion to Dismiss is moot, and the Court will only consider the substance of the present Motion to Dismiss. ECF No. 14.

[2] The facts below are taken from Mr. Carter's Amended Complaint. ECF No. 11. For the purposes of the Motion at issue, the Court will treat the well-pleaded facts alleged in the Amended Complaint as true.

[3] ECF No. 11 ¶ 6.

[4] *Id.* ¶¶ 7–8.

Carter had short-term disability coverage through Hartford.[5] Throughout his nineteen years of employment, Mr. Carter performed his job duties satisfactorily and was never formally disciplined nor given negative performance evaluations.[6]

Around 2019, Mr. Carter was diagnosed with anxiety and depression, and he has since been receiving ongoing medical treatment for these conditions.[7] In 2022, Mr. Carter was prescribed medication for his anxiety.[8] In early 2024, Mr. Carter's divorce proceedings significantly exacerbated his anxiety and depression, impacting Mr. Carter's ability to concentrate, think, interact with others, and sleep.[9] Mr. Carter's sleeplessness was, in particular, worsening.[10] Mr. Carter reached out to his boss and to Human Resources ("HR") during this period, informing them that he was not doing well.[11] When Mr. Carter would inform his supervisor, Mr. Burgner, about medical appointments and receiving different or new medication prescriptions, Mr. Burgner would make jokes about Mr. Carter being "drug tested," which created additional stress and anxiety for him.[12]

On February 1, 2024, Mr. Carter's treating physician recommended that Mr. Carter take a short-term medical leave from February 12, 2024, through February 26, 2024, to allow for medication adjustment and stabilization of his conditions.[13] Mr. Carter notified Mr. Burgner, as well as Ms. Larsen, the HR representative, of the physician's recommendation, and Mr. Carter

---

[5] *Id.* ¶ 11.
[6] *Id.* ¶ 9.
[7] *Id.* ¶ 12.
[8] *Id.*
[9] *Id.* ¶¶ 13–14.
[10] *Id.* ¶ 15.
[11] *Id.* ¶ 13.
[12] *Id.* ¶ 15.
[13] *Id.* ¶ 16.

requested permission to take leave under the Family Medical Leave Act ("FMLA").[14] On February 5, 2024, Mr. Burgner verbally approved Carter's request to use paid time off for the medical leave.[15] Mr. Carter was instructed to have his physician provide medical documentation to both Canyon and Hartford, the company's disability insurance provider.[16]

On February 16, 2024, Hartford sent Mr. Carter's physician a request for medical information with a response deadline of February 21, 2024.[17] Mr. Carter's physician provided his response to Hartford on February 20, 2024.[18] Hartford then approved Mr. Carter's short-term disability leave.[19] Due to Hartford's formal approval and Mr. Burgner's verbal approval, Mr. Carter believed his leave was authorized.[20]

When Mr. Carter returned from leave on February 26, 2024, he was summoned to a meeting with Mr. Burgner and Ms. Larsen.[21] During this meeting, Mr. Burgner informed Mr. Carter that he was being terminated for failing to work and report his time during the week prior to his leave.[22] Mr. Carter then retained legal counsel and provided proof of his numerous attempts to contact Mr. Burgner to report the time at issue.[23] Canyon then claimed that Mr. Carter was terminated for failing to submit proper FMLA paperwork, which had rendered Mr. Carter's leave of absence unapproved.[24]

On June 13, 2024, Mr. Carter filed a charge of discrimination with the Utah

---

[14] *Id.* ¶ 17.
[15] *Id.* ¶ 19.
[16] *Id.* ¶ 20.
[17] *Id.* ¶ 26.
[18] *Id.* ¶ 27.
[19] *Id.* ¶ 28.
[20] *Id.* ¶ 29.
[21] *Id.* ¶ 34.
[22] *Id.* ¶ 35.
[23] *Id.* ¶ 37.
[24] *Id.* ¶¶ 38, 41.

Antidiscrimination and Labor Division ("UALD") and the Equal Employment Opportunity Commission ("EEOC"), alleging discrimination based on disability and retaliation.[25] The EEOC issued a Notice of Rights on March 31, 2025.[26]

Mr. Carter initiated the instant action on July 9, 2025.[27] On October 3, 2025, Canyon filed a Motion to Dismiss with respect to the initial Complaint.[28] However, on October 17, 2025, Mr. Carter filed an Amended Complaint.[29] The Amended Complaint alleges three causes of action: (1) Retaliation in Violation of the FMLA, (2) Failure to Accommodate in Violation of the Americans with Disabilities Act ("ADA"), and (3) Discrimination in Violation of the ADA.[30]

Canyon filed the instant Motion to Dismiss the Amended Complaint on October 31, 2025.[31] Mr. Carter filed his Opposition on November 28, 2025,[32] to which Canyon replied on December 12, 2025.[33]

### **MOTION TO DISMISS STANDARD**

Canyon brings its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  Under Rule 12(b)(6), a claim is subject to dismissal if the plaintiff's complaint fails to "state a claim upon which relief can be granted." In construing a plaintiff's complaint, the Court will assume the truth of any well-pleaded facts and draw all reasonable inferences in the light most favorable to the plaintiff.[34] To survive a Rule 12(b)(6) motion, a complaint "must contain

---

[25] *Id.* ¶ 50.
[26] *Id.* ¶ 52.
[27] ECF No. 1.
[28] ECF No. 10.
[29] ECF No. 11.
[30] *Id.*
[31] ECF No. 14.
[32] ECF No. 15.
[33] ECF No. 16.
[34] *See Leverington v. City of Colo. Springs*, 643 F.3d 719, 723 (10th Cir. 2011).

sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'"[35] "[F]acts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."[36] Furthermore, "courts may consider documents that a plaintiff (1) attaches to [his] complaint; (2) incorporates by reference in [his] complaint; or (3) refers to in [his] complaint and that are central to [his] complaint and indisputably authentic."[37]

## DISCUSSION

Preliminarily, the Court notes that Canyon previously filed a Motion to Dismiss[38] in response to Mr. Carter's initial Complaint.[39] Pursuant to Federal Rule of Civil Procedure 15(a)(1), "[a] party may amend its pleading once as a matter of course no later than . . . (B) if the pleading is one to which a responsive pleading is required . . . 21 days after service of a motion under Rule 12(b)[.]" "The filing of a timely amended complaint as a matter of course under Rule 15(a)(1)(B) renders a motion to dismiss the prior complaint moot."[40] Mr. Carter filed his Amended Complaint around fourteen days following the service of Canyon's previous Motion to Dismiss. Canyon's previous Motion to Dismiss is thus moot. As such, the Court considers in this Order only the substance of the Motion to Dismiss[41] filed on October 31, 2025, in response to

---

[35] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[36] *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006).
[37] *Fuqua v. Santa Fe Cnty. Sheriff's Off.*, 157 F.4th 1288, 1297 (10th Cir. 2025) (citation modified).
[38] ECF No. 10.
[39] ECF No. 1.
[40] *Madrid v. Wells Fargo Bank*, No. 1:25-cv-00029-MLF-LF, 2025 WL 1898348, at *1 (D.N.M. July 9, 2025); *see Franklin v. Kan. Dep't of Corrs.*, 160 F. App'x 730, 734 (10th Cir. 2005) (unpublished) ("An amended complaint supersedes the original complaint and renders the original complaint of no legal effect.").
[41] ECF No. 14.

Mr. Carter's Amended Complaint.[42]

With the instant Motion, Canyon seeks dismissal of the Amended Complaint. In doing so, Canyon asks the Court to refer to and rely on several documents Canyon has attached as exhibits to its Motion. "Generally, a court may consider only the contents of a complaint when ruling on a motion to dismiss."[43] "When the district court considers documents outside the pleadings without a valid exception, it must convert the motion to dismiss into a motion for summary judgment."[44] In doing so, "[t]he district court must inform the parties of its conversion and give the parties a reasonable opportunity to accumulate and present all relevant evidence."[45] Failure to do so may constitute reversible error.[46]

The Court has, under Rule 12(d), "broad discretion to refuse to accept . . . extra-pleading materials and [to] resolve the motion solely on the basis of the pleading itself."[47] Here, the Court declines to convert the Motion to Dismiss to a motion for summary judgment, as doing so would "require the Court to give notice to the parties and allow Plaintiff an opportunity to present [his] own extra-pleading evidence, an inefficient process better left for a motion for summary judgment filed in the normal course of the discovery process."[48] The law does allow the Court to, without converting the motion to dismiss, "consider documents that a plaintiff (1) attaches to h[is] complaint; (2) incorporates by reference in h[is] complaint; or (3) refers to in h[is] complaint and that are central to h[is] complaint and indisputably authentic."[49] Mr. Carter did not

---

[42] ECF No. 11.

[43] *Cuervo v. Sorenson*, 112 F.4th 1307, 1312 (10th Cir. 2024).

[44] *Id.* (citing Fed. R. Civ. P. 12(d)).

[45] *Id.*

[46] *Id.*

[47] *Navajo Nation v. Urb. Outfitters, Inc.*, 935 F. Supp. 2d 1147, 1157 (D.N.M. 2013) (citing *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998)).

[48] *Id.* at 1157.

[49] *Cuervo*, 112 F.4th at 1312.

attach any of the documents at issue to the Amended Complaint nor did he expressly incorporate any documents by reference. In Canyon's Reply, it appears to concede that Exhibits C and D do not fall within any of these exceptions, as it does not provide any meaningful argument to counter Mr. Carter's objections to these documents. The Court will, thus, not consider Exhibits C and D and will limit its discussion to Exhibits A and B.

Exhibit A consists of a Return-to-Work Form.[50] Exhibit B consists of the forms allegedly provided to Mr. Carter by Canyon regarding what was needed to apply for Short-Term Disability.[51] Even assuming these documents are referred to in the Amended Complaint and are central to Mr. Carter's claims, "the [C]ourt has discretion to consider such materials."[52] And the Court does not find it necessary or helpful to consider these documents in resolving this Motion. Mr. Carter's Return-to-Work Form and unsigned copies of the documents allegedly provided to Mr. Carter do not definitively establish that Mr. Carter did not return the requisite documentation to Canyon. Furthermore, this issue can be determined based upon the well-pleaded allegations alone. The Court therefore declines to consider Exhibits A and B for the purposes of this Motion.

Turning, then, to the substance of the instant Motion, the Amended Complaint alleges three causes of action: (1) Retaliation in Violation of the FMLA, (2) Failure to Accommodate in Violation of the ADA, and (3) Discrimination in Violation of the ADA. The Court will first address Canyon's arguments against Mr. Carter's ADA claims, followed by Canyon's arguments against Mr. Carter's FMLA claim.

### A. ADA Disability Discrimination

The ADA prohibits employers from discriminating "against a qualified individual on the

---

[50] ECF No. 14, Ex. A.
[51] *Id*. Ex. B.
[52] *Prager v. LaFaver*, 180 F.3d 1185, 1189 (10th Cir. 1999).

basis of disability[.]"[53] To establish a prima facie case of disability discrimination[54] under the ADA, a plaintiff must demonstrate that he "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer . . . because of that disability."[55]

Canyon argues that Mr. Carter's ADA discrimination claim fails because he has not sufficiently pleaded that he is a disabled person as defined by the ADA. The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more major life activities of such an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment[.]"[56] To establish the existence of an actual disability,[57] a plaintiff "must (1) have a recognized impairment, (2) identify one or more appropriate major life activities, and (3) show the impairment substantially limits one or more of those activities."[58]

---

[53] 42 U.S.C. § 12112(a).

[54] "If a plaintiff offers no direct evidence of discrimination, which is often the case," courts in the Tenth Circuit apply "the burden-shifting analysis articulated by the Supreme Court in" *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *E.E.O.C. v. C.R. England, Inc.*, 644 F.3d 1028, 1038 (10th Cir. 2011). This framework requires a plaintiff to "first make out a prima facie case of discrimination[.]" *Id*. Then, "[a]fter the plaintiff has made the requisite showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id*. "If the defendant proffers such a reason, the burden . . . shifts back to the plaintiff to show that the defendant's stated reasons are merely 'pretextual.'" *Id*.

[55] *Felkins v. City of Lakewood*, 774 F.3d 647, 650 (10th Cir. 2014).

[56] 42 U.S.C. § 12102(1).

[57] While Mr. Carter makes some argument in his Opposition that Canyon regarded him as impaired, the claim as set forth in the Amended Complaint appears to be premised on Mr. Carter's having an actual disability. The Court will, thus, analyze it as such.

[58] *Felkins*, 774 F.3d at 650 (10th Cir. 2014); *see also* 29 C.F.R. § 1630.2(j)(1)(ii) ("An impairment is a disability within the meaning of [§ 1630.2] if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population.").

"Anxiety and depression are recognized mental impairments under the ADA."[59] However, they are not "per se disabilities, and merely stating that [a plaintiff] has received a diagnosis of one of these conditions does not establish that a plaintiff is disabled under the ADA."[60] "To constitute a disability, a plaintiff's depression must substantially limit the plaintiff's performance of a major life activity."[61] Furthermore, "[i]mpairments that are 'transitory and minor' may not be used to support a claim of disability discrimination, and an impairment is transitory if it has an actual or expected duration of less than six months."[62] "The determination of whether a condition is transitory and minor must be made using an objective standard."[63]

With respect to major life activities, the regulations implementing the ADA Amendments Act ("ADAAA") provide as follows:

(1) In general. Major life activities include, but are not limited to:

(i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others; and

(ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions.[64]

Here, Mr. Carter alleges that he has been diagnosed with anxiety and depression since at

---

[59] *Woodard v. Cmty. Health Ctrs. Inc.*, No. CIV-23-666-G, 2024 WL 3641399, at *5 (W.D. Okla. Aug. 2, 2024) (collecting cases).
[60] *Russell v. Phillips 66 Co.*, 184 F. Supp. 3d 1258, 1268 (N.D. Okla. 2016), *aff'd*, 687 F. App'x 748 (10th Cir. 2017).
[61] *Id.* (citing *Doyal v. Okla. Heart, Inc.*, 213 F.3d 492, 495–96 (10th Cir. 2000)).
[62] *Id.* at 1267–68 (citing 42 U.S.C. § 12103(3)(B)).
[63] *Id.* at 1268 (citing 29 C.F.R. § 1630.15(f)).
[64] 29 C.F.R. § 1630.2(i).

least 2019 and that he has received ongoing medical treatment for these conditions.[65] In 2022, he was put on prescription medication for his anxiety.[66] Mr. Carter's anxiety and depression then worsened in early 2024, and he alleges having doctor's appointments and receiving different or new prescriptions.[67] He further alleges that his anxiety and depression substantially limited his ability to concentrate, think, interact with others, and sleep[68] and that his sleeplessness was getting worse.[69] Having to draw reasonable inferences in Mr. Carter's favor and accept well-pleaded allegations as true, it is plausible that, based upon these allegations, Mr. Carter has a recognized impairment that is neither transitory nor minor and that substantially limits his performance of a major life activity. As such, Mr. Carter has sufficiently pleaded that he is a disabled person within the meaning of the ADA. The Court thus denies Canyon's request to dismiss Mr. Carter's ADA discrimination claim.

## B.   ADA FAILURE TO ACCOMMODATE

Discrimination under the ADA includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer][.]"[70] To establish a prima facie case for failure to accommodate,[71] a plaintiff must show: "(1) he was disabled; (2) he was otherwise qualified; (3) he requested a plausibly reasonable accommodation; and (4) Defendant refused to

---

[65] ECF No. 11 ¶ 12.

[66] *Id.*

[67] *Id.* ¶¶ 13, 15.

[68] *Id.* ¶ 14.

[69] *Id.* ¶ 15.

[70] 42 U.S.C. § 12112(b)(5)(A).

[71] As with Mr. Carter's disability discrimination claim, his failure-to-accommodate claim would be subject to the *McDonnell Douglas* burden-shifting framework. *See Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1192–93 (10th Cir. 2022).

accommodate his disability."[72]

Canyon argues that Mr. Carter has failed to sufficiently plead that he was disabled and that he requested a plausibly reasonable accommodation. As the Court discussed in the earlier section, Mr. Carter has sufficiently pleaded that he is a disabled person within the meaning of the ADA. This leaves remaining the issue of whether the allegations are adequate to show that Mr. Carter requested a plausibly reasonable accommodation.

"Reasonable accommodation" includes "those accommodations which presently, or in the near future, enable the employee to perform the essential functions of his job."[73] "The reasonableness determination depends on the facts of each case taking into consideration the particular individual's disability and employment position."[74] In the Tenth Circuit, employers and employees are required to engage in "the interactive process" to determine an appropriate accommodation.[75] The "interactive process contemplates an affirmative obligation to undertake a good faith back-and-forth process between the employer and the employee, with the goal of identifying the employee's precise limitations and attempting to find a reasonable accommodation for those limitations."[76] This process commences when "the employee provid[es] notice to the employer of his disability and any resulting limitations[,]"[77] thereby triggering "the employer's responsibility to engage in the interactive process where both parties must communicate in good-faith."[78]

"[G]ood-faith communication is imperative because each side will possess different

---

[72] *Id.* at 1192.
[73] *Id.* at 1193.
[74] *Id.* (citation modified).
[75] *Id.*
[76] *Id.* (citation modified)
[77] *Id.*
[78] *Id.*

information, all of which is critical to determining whether there is a reasonable accommodation that might permit the disabled employee to perform the essential functions of [his] job."[79] To that end, "[n]either party may create or destroy liability by causing a breakdown of the interactive process[,]"[80] and "[w]here the missing information is of the type that can only be provided by one of the parties, failure to provide the information may be the cause of the breakdown and the party withholding the information may be found to have obstructed the process."[81] As relevant here, "[a]n employer may require objective medical documentation supporting the request in order to determine whether it is one for an accommodation under the ADA or just a request for time off."[82] And an "employee's failure to provide medical information necessary to the interactive process precludes h[im] from claiming that the employer violated the ADA by failing to provide reasonable accommodation."[83]

Here, Mr. Carter alleges that he notified his supervisor and the HR representative at Canyon of his doctor's recommending he take short-term medical leave, and he requested to take such leave under FMLA.[84] Accepting this allegation as true, it is reasonable to infer that this notice triggered the interactive process. Mr. Carter then alleges that his supervisor verbally approved the request for medical leave[85] but that he "was instructed to have his physician provide medical documentation to both Canyon [] and Hartford."[86]

---

[79] *Id.* (citation modified).
[80] *Aubrey v. Koppes*, 975 F.3d 995, 1008 (10th Cir. 2020).
[81] *Templeton v. Neodata Servs.*, 162 F.3d 617, 619 (10th Cir. 1998) (modification in original).
[82] *Skeith v. FCA US LLC*, 807 F. Supp. 3d 1304, 1309 (D. Colo. 2025).
[83] *Templeton*, 162 F.3d at 619.
[84] ECF No. 11 ¶ 17. The Tenth Circuit has "held that, under the appropriate circumstances, '[a]n allowance of time for medical care or treatment may constitute a reasonable accommodation.'" *C.R. England, Inc.*, 644 F.3d at 1048 (alteration in original) (quoting *Rascon v. USW. Commc'ns, Inc.*, 143 F.3d 1324, 1333–34 (10th Cir. 1998)).
[85] ECF No. 11 ¶ 19.
[86] *Id.* ¶ 20.

According to the following allegation, "Mr. Carter's physician provided all requested medical information and documentation to Hartford and Canyon [] as instructed."[87] However, insofar as this statement alleges that the required medical documentation was provided to Canyon as instructed, it is a naked assertion unsupported by factual enhancement. Mr. Carter provides factual detail about his physician returning the documentation to Hartford,[88] but he has not provided factual detail that the documentation was provided to Canyon. Rather, he alleges that he had Hartford's formal approval based on the documentation and Canyon's verbal approval.[89] The inference that arises from this is that the requisite medical documentation was not provided to Canyon such as to receive its formal approval. "Labels, conclusions, formulaic recitations of elements, and naked assertions"[90] are insufficient to "nudge [a] claim across the line from conceivable or speculative to plausible."[91]  Such conclusory allegations—meaning that they state "an inference without stating underlying facts or [are] devoid of any factual enhancement"[92]—"are not entitled to the assumption of truth."[93] Instead, the Court "disregard[s] conclusory statements and look[s] to the remaining factual allegations to see whether Plaintiff[] [has] stated a plausible claim."[94] Because the statement that the required medical documentation was provided to Canyon as instructed is conclusory, the Court will disregard it.

Mr. Carter asserts that the allegations about his physician providing the documents to Hartford are sufficient to show that he properly engaged in the interactive process. This is not,

---

[87] *Id.* ¶ 21.
[88] *Id.* ¶¶ 26–28.
[89] *Id.* ¶ 29.
[90] *Brooks v. Mentor Worldwide LLC*, 985 F.3d 1272, 1281 (10th Cir. 2021).
[91] *Id.*
[92] *Id.*
[93] *Id.*
[94] *Id.*

however, a reasonable inference that can be drawn based on the well-pleaded allegations. Mr. Carter was, as he alleged, instructed to provide the medical documentation to "*both* Hartford and Canyon."[95] And he has failed to allege facts plausibly showing that he provided—or even attempted to provide—the medical documentation to Canyon. As such, Mr. Carter has failed to plausibly allege that he engaged in the interactive process by providing the requisite medical documentation and that Canyon, rather than himself, was the cause of the breakdown of that process. He has, thus, failed to state a claim for failure to accommodate. The Court will dismiss this claim without prejudice.[96]

## C.   FMLA Retaliation

"The FMLA requires employers with at least 50 employees to allow their employees up to twelve weeks of annual leave to care for the employee's or a family member's 'serious health condition.'"[97] To establish a prima facie case of retaliation under the FMLA,[98] a plaintiff must show: "(1) he engaged in a protected activity by taking FMLA-protected leave; (2) [the employer] took a materially adverse action against him; and (3) the circumstances permit an inference of causal connection between the two events[.]"[99]

Canyon argues, in essence, that Mr. Carter has failed to plausibly allege that he engaged in a protected activity because his leave was not protected by the FMLA due to his failure to

---

[95] ECF No. 11 ¶ 20 (emphasis added).

[96] "A dismissal with prejudice is appropriate where a complaint fails to state a claim under Rule 12(b)(6) and granting leave to amend would be futile." *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006). At this juncture, the Court is not satisfied that granting leave to amend would necessarily be futile.

[97] *Dry v. The Boeing Co.*, 92 F. App'x 675, 677 (10th Cir. 2004) (unpublished); *see also* 29 U.S.C. § 2612(a)(1)(D).

[98] "Retaliation claims under the FMLA are subject to the burden-shifting analysis of" *McDonnell Douglas. Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006).

[99] *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 540 (10th Cir. 2014).

return the requisite medical certification to Canyon. The Court agrees.

Leave is qualifying under the FMLA "if (1) it is the result of a 'serious health condition' that (2) 'makes the employee unable to perform the functions' of [his] job."[100] "If either of these elements is not met, the employee is not entitled to FMLA leave[.]"[101] To verify entitlement to FMLA leave, "an employer may require that leave requested under § 2612(a)(1)(D) 'be supported by a certification issued by [a] health care provider of the eligible employee.'"[102] "[T]he employee shall provide, in a timely manner, a copy of such certification to the employer."[103] "If the employee never produces the certification, the leave is not FMLA leave."[104]

Again, Mr. Carter alleges that he notified his supervisor and the HR representative at Canyon of his doctor's recommending he take short-term medical leave, and he requested to take such leave under FMLA.[105] Mr. Carter then alleges that his supervisor verbally approved the request for medical leave[106] but that he "was instructed to have his physician provide medical documentation to both Canyon [] and Hartford."[107] According to the Amended Complaint, "Mr. Carter's physician provided all requested medical information and documentation to Hartford and Canyon [] as instructed."[108] But, as discussed above, the statement that the required medical

---

[100] *Crowell v. Denver Health & Hosp. Auth.*, 572 F. App'x 650, 654 (10th Cir. 2014) (unpublished) (quoting *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 313 (7th Cir. 1998) (quoting 29 U.S.C. § 2612(a)(1)(D)); *see also* 29 C.F.R. § 825.112(a)(4) (providing that serious health conditions are a qualifying reason for FMLA leave).

[101] *Id.* (citation modified).

[102] *Id.* (quoting 29 U.S.C. § 2613(a)); *see also* 29 C.F.R. § 825.305(a).

[103] 29 U.S.C. § 2613(a).

[104] 29 C.F.R. § 825.313(b).

[105] ECF No. 11 ¶ 17.

[106] *Id.* ¶ 19.

[107] *Id.* ¶ 20.

[108] *Id.* ¶ 21.

documentation was provided to Canyon as instructed is conclusory, and the Court will disregard it.

Mr. Carter argues that the allegations about his physician providing the documents to Hartford are sufficient to show that he timely provided the requested copy of the medical certification to the employer. But, as with the failure-to-accommodate claim, this is not a reasonable inference that can be drawn based on the well-pleaded allegations. Mr. Carter was, as he alleged, instructed to provide the medical documentation to "*both* Hartford and Canyon."[109] And he has failed to allege facts plausibly showing that he provided the medical documentation to Canyon. He has thus failed to plausibly allege that he timely returned the medical certification to the employer and, in turn, that his leave was protected by the FMLA such that he engaged in a protected activity by taking the leave. As a result, he has failed to state a claim for FMLA retaliation.[110] The Court will dismiss this claim without prejudice.[111]

---

[109] *Id*. ¶ 20 (emphasis added).

[110] Mr. Carter argues that his Amended Complaint also asserts a claim for FMLA interference. While the Amended Complaint does use the term "interfered," it does not include a separate count for FMLA interference. *See* ECF No. 11. The Court thus does not construe the Amended Complaint to assert such a claim. In any event, however, Mr. Carter would fail to state an FMLA interference claim for the same reasons that he has failed to state an FMLA retaliation claim. To establish an interference claim, Mr. Carter must show: "(1) that [he] was entitled to FMLA leave, (2) that some adverse action by the employer interfered with h[is] right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of h[is] FMLA rights." *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007). Because Mr. Carter has failed to plausibly allege that he timely returned the medical certification to the employer, he has failed to plausibly allege that he was entitled to FMLA leave. *See Crowell*, 572 F. App'x at 656 ("Importantly, also absent from the record is a medical certification supporting that Crowell was unable to perform the functions of her job during her June 5–6 shift due to a serious health condition.").

[111] As with the failure-to-accommodate claim, the Court is not satisfied at this juncture that granting leave to amend would be futile so as to justify a dismissal with prejudice. *See Brereton*, 434 F.3d at 1219.

## ORDER

For the reasons discussed above, it is hereby ORDERED that Defendant's Motion to Dismiss (ECF No. 10) is DENIED AS MOOT.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss Amended Complaint (ECF No. 14) is GRANTED IN PART and DENIED IN PART as follows:

1. Plaintiff's claim for Retaliation in Violation of the FMLA (Count I) is DISMISSED WITHOUT PREJUDICE;

2. Plaintiff's claim for Failure to Accommodate in Violation of the ADA (Count II) is DISMISSED WITHOUT PREJUDICE;

3. Plaintiff's claim for Disability Discrimination in Violation of the ADA (Count III) remains.

IT IS FURTHER ORDERED that within twenty-one (21) days of this Order, Plaintiff may, if appropriate, file a Motion for Leave to File a Second Amended Complaint.

DATED this 14th day of July 2026.        BY THE COURT:

_____
Ann Marie McIff Allen
United States District Judge

17